## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ERIKA HERNANDEZ, *et al.*, | |
| v. | Civil Action No. CCB-18-1582 |
| WOODSTOCK BAR & GRILL LLC, *et al.* | |

## MEMORANDUM

Plaintiffs Erika Hernandez and Denia Paz (collectively, the "plaintiffs") move the court to award attorneys' fees against defendants Woodstock Bar & Grill, LLC and Ghayan Ali Goraya (collectively, the "Woodstock defendants"). (ECF 77, Pls.' Mot. for Att'ys' Fees.) The Woodstock defendants opposed the motion (ECF 83, Defs.' Opp.), and the plaintiffs replied (ECF 88, Pls.' Reply.) No oral argument is necessary. *See* Local Rule 105.6. For the reasons below, the court will Grant the motion. The court will award the plaintiffs $11,120.75 in attorneys' fees against Goraya, and $63,875.80 against Woodstock. The plaintiffs will be awarded $423.20 in costs against Goraya, and $423.20 in costs against Woodstock.

## I.    BACKGROUND

Erika Hernandez and Denia Paz worked for Players Bar & Grill, which became the Woodstock Bar & Grill after Ghayan Ali Goraya purchased and renamed the operation in 2017. (ECF 1, Compl. ¶¶ 15–16, 21.) In June 2018, Hernandez and Paz sued Players, Woodstock, and their respective owners, for violating the Federal Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law. (*Id.* at ¶ 1.) The plaintiffs sought damages including unpaid overtime wages, liquidated damages, treble damages, attorneys' fees, and costs.

1

In January 2019, counsel for Woodstock and Goraya offered to settle the dispute for $20,000. (ECF 84-2, January 29, 2019, A. Turner Email, at 2.)[1] The Woodstock defendants asserted that this sum exceeded their potential liability, including approximately 50% of the plaintiffs' total attorneys' fees and costs.[2] Plaintiffs' counsel rejected this offer. At the time, the other defendants—Players and Simon Sadoun, Players's owner—had not yet offered to settle. (ECF 84-3, January 28, 2019, M. Kurzyna Email, at 9.) The plaintiffs asserted that Woodstock and Goraya's settlement offer ignored Woodstock's potential liability for Players's overtime violations under a theory of successor liability. (*Id.* at 2, 7, 9.) Woodstock and Goraya's counsel argued that "the Fourth Circuit has not accepted successor liability under the FLSA." (*Id.* at 8.) A week later, Woodstock and Goraya's counsel asserted that plaintiffs' counsel was negotiating in bad faith because only Woodstock, not Goraya, could be liable under successor liability. (ECF 84-4, February 5, 2019, A. Turner Email, at 2.)

After a scheduling conference call on March 6, 2019, counsel for Woodstock and Goraya emailed plaintiffs' counsel to confirm the Woodstock defendants' intent to tender the plaintiffs, what the Woodstock defendants believed to be, full satisfaction of their potential liability. (ECF 84-11, March 6, 2019, Email from A. Turner.) On March 8, 2019, the Woodstock defendants tendered that amount, along with what the defendants believed to be roughly 50% of the plaintiffs' attorneys' fees. (ECF 84-12, Payment Tender Letter.) The defendants, in their letter tendering payment, requested that Goraya be dismissed from the case. (*Id.* at 4; *see also* ECF 84-13, ECF 84-14.) Plaintiffs' counsel declined, arguing that the tendered $5,500 in attorneys' fees did not

---

[1] Citations to the page numbers generally may refer to the ECF pagination at the top of the document where a document's original pagination is unclear.

[2] Although the court may not consider settlement communications in some circumstances, *see* Fed. R. Civ. P. 408, the parties waived such protection for the relevant documents.

satisfy the Woodstock defendants' obligations. Contrary to Goraya's assertions that he was liable only for a quarter of the total attorneys' fees (ECF 83, at 10), plaintiffs' counsel asserted "the bulk of the fees [were] apportionable to Mr. Goraya and Woodstock" due to Mr. Turner's "back-and-forth on successor liability" (ECF 84-15, March 13, 2019, Email from M. Kurzyna).

In April 2019, Mr. Turner moved to withdraw his appearance on behalf of Woodstock, apparently to allow the plaintiffs to move for a default judgment against Woodstock. (ECF 21, Turner's Mot. to Withdraw; ECF 22 Order Granting Mot. to Withdraw.)[3] Then Mr. Turner moved for summary judgment on Goraya's behalf, arguing the claims against Goraya were moot since he tendered payment for the claimed damages in full.

Before the motion was ruled on , however, on June 3, 2019, the plaintiffs and the Woodstock defendants agreed to the essential terms of a settlement. (ECF 41-1, June 3, 2019, Email from A. Turner.) On July 25, 2019, Mr. Kurzyna sent the agreement, signed by the plaintiffs, to Turner. (ECF 40-4.) On August 9, 2019, Mr. Turner wrote to Mr. Kurzyna apologizing for the delay and stated that "[m]y client indicated that he will send me the signed agreement today." (ECF 40-5.) On September 4, 2019, however, Turner wrote to Kurzyna that his client's "financial circumstances have changed and, as a result, we need to revise the draft agreement slightly." (ECF 40-6.) The revision involved changing the settlement agreement so that Goraya was no longer jointly and severally liable with Woodstock Bar & Grill for the total settlement amount. (*Id.*) Such changes were not acceptable to the plaintiffs, and they moved to enforce the settlement agreement.

---

[3] As a corporate entity, Defendant Woodstock Bar and Grill, LLC must have counsel or face entry of a default judgment within 30 days of striking counsel's appearance. *See* Local Rule 101.2.

(ECF 40.) The court denied the plaintiffs' motion because the proposed settlement agreement was unenforceable under the Maryland Statute of Frauds. (ECF 44, Mem.; ECF 45, Order.)[4, 5]

On June 19, 2020, the plaintiffs "discovered that Defendants had sold the restaurant to Main Stage [Grille LLC] a year earlier, leaving Woodstock with no assets." (ECF 88, at 7.) So on June 23, 2020, the plaintiffs moved to amend their complaint by adding Main Stage as a defendant. (ECF 49, Mot. for Leave to File Am. Compl.)

After briefing the motion for leave, the parties informed the court that they were ready to settle. So the court denied the motion for leave to amend without prejudice. (ECF 62.) This time around, the parties executed a settlement agreement (ECF 75), which the court approved (ECF 76). The settlement agreement provides the following: (1) Woodstock consents to a $6,650 judgment in the plaintiffs' favor; (2) Woodstock consents to the court's determination of reasonable attorneys' fees and costs attributable to it; (3) Goraya consents to the court's determination of reasonable attorneys' fees and costs attributable to him; and (4) Goraya guarantees to pay the balance remaining on the judgment against Woodstock, up to $25,000.00, in the event of an uncured default by Woodstock. (ECF 75.)

## II.   LEGAL STANDARD

Successful plaintiffs in FLSA actions are entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b). Although the payment of attorney's fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). In deciding

---

[4] Although the plaintiffs and the Woodstock defendants did not have an enforceable settlement agreement at this time, the court approved a settlement agreement between the plaintiffs and the Players defendants on September 25, 2019. (ECF 39, Order Approving Settlement.)

[5] The plaintiffs do not seek attorneys' fees related to this motion.

the amount of attorney's fees to award, the court must calculate the lodestar, or "the number of

hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465

U.S. 886, 888 (1984). A reasonable fee is one that is "sufficient to induce a capable attorney to

undertake the representation of a meritorious . . . case." *Perdue v. Kenny A.*, 559 U.S. 542, 552

(2010). According to the Supreme Court, "the lodestar method yields a fee that is presumptively

sufficient to achieve this objective." *Id.*

Historically, courts have assessed the reasonableness of fee petitions by considering the

following "*Johnson* factors":

> (1) the time and labor required in the case, (2) the novelty and difficulty of the
> questions presented, (3) the skill required to perform the necessary legal services,
> (4) the preclusion of other employment by the lawyer due to acceptance of the case,
> (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time
> pressures imposed in the case, (8) the award involved and the results obtained, (9)
> the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the
> case, (11) the nature and length of the professional relationship between the lawyer
> and the client, and (12) the fee awards made in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citation omitted). The *Johnson*

factors may properly be used to "inform" and sometimes "adjust" the calculation of the lodestar

number. *See McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013).

Determining the lodestar amount is only the first step. The court must then "subtract fees

for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88

(quoting *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). Third, and

finally, the court must analyze the "degree of success enjoyed by the plaintiff," and determine

whether the entire claimed fees amount, or "some percentage" of that amount, is a reasonable

award. *Id.* (quoting *Robinson*, 560 F.3d at 244.)

## III.   DISCUSSION

### A. The Lodestar Calculation

*1.   Reasonable Hourly Rate*

The defendants do not challenge the proposed hourly rates. Counsel for the plaintiffs request the following hourly fees: (1) $395.00 for attorney Mariusz Kurzyna; (2) $475.00 for attorney Philip B. Zipin; (3) $395.00 for attorney Michael K. Amster; (4) $395.00 for attorney Gregg C. Greenberg; and $135.00 for paralegal work. The proposed rates fall within the accepted range for lawyers with comparable experience. *See* Local Rules, App. B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases.[6] A Maryland practitioner vouches for the reasonability of the rates. (ECF 77-5, Steven Brown Decl.) And the proposed rates generally track rates previously awarded by the court. *See Melendez v. Spilled Milk Catering, LLC*, No. CV PWG-18-2135, 2019 WL 2921782, at \*5 (D. Md. July 8, 2019) (awarding Mariusz Kurzyna and Michael K. Amster an hourly rate of $350.00 three years ago); *Matias Guerra v. Teixeira*, No. CV TDC-16-0618, 2019 WL 3927323, at \*8 (D. Md. Aug. 20, 2019) (same).[7] Accordingly, the court accepts the proposed hourly rates as reasonable, and will apply them in calculating the lodestar.

*2.   Reasonable Hours Expended*

The court has reviewed the hourly billing entries submitted by plaintiffs' counsel. (ECF 77-2, Initial Billing Spreadsheet; ECF 88-5, Updated Billing Spreadsheet.) The court starts with the first *Johnson* factor, which considers "the time and labor required" for the case. From the outset, the court will reduce the fee somewhat based on two subpar documentation practices. *See Bocangel v. Warm Heart Fam. Assistance Living, Inc.*, 561 F. Supp. 3d 534, 539 (D. Md. 2021)

---

[6] Mr. Kurzyna has been practicing law since 2006, Mr. Zipin since 1982, Mr. Greenberg since 2007, and Mr. Amster since 2009. (ECF 77-2, Mariusz Kurzyna Decl. ¶¶ 3, 13.)

[7] Unpublished opinions are for the soundness of their reasoning, not for any precedential value.

(noting "vague task entries," "double billing" and "block billing" may constitute "inadequate documentation"). First, there are several double billed entries. (*See, e.g.*, ECF 88-5, entries on January 10, 2018; entries on April 26, 2018, entries on May 10, 2018; entries on May 31, 2018; entries on July 2, 2018; entries on March 18, 2019; entries on April 23, 2019; entries on August 19, 2020; entries on March 8, 2021.) "Generally, only one lawyer is to be compensated for client, third party, and intra-office conferences, although . . . the time may be charged at the rate of the more senior lawyer." *See* Local Rules App. B(2)(d). The court will strike any double entries but leave whichever entry was billed at the higher rate. *See Bocangel*, 561 F. Supp. 3d at 539 (striking entries involving co-counsel conferring about "drafting decisions"). Accordingly, the requested award will be reduced by $1027.50.

Second, some entries combine multiple tasks without any specification of what time was spent on each. (*See, e.g.*, ECF 88-5, at 4, 9, 12 "Draft status report, email OC re same, t/c with OC re same, edit and file;" "Review attorney time records for apportionment calculations, review related case law, email OC re guaranty cap"; "Review counter-offer from Woodstock, perform legal research, respond to offer;" "Review relative claims and trust funds, calculate partial disbursements, T/C with clients re same.") The court will reduce the amount billed in these entries by 50%. *See Bocangel*, 561 F. Supp. 3d at 539 (reducing fee for "entries combin[ing] multiple tasks"). Accordingly, the court will reduce the award by $987.50.

The court next considers the "novelty and difficulty of the questions." On the one hand, this case raised no novel legal questions, and the facts were straightforward. *Orellana v. ACL Cleaning, LLC*, No. CV DKC 19-2318, 2022 WL 3586513, at *3 (D. Md. Aug. 22, 2022) ("Most pertinent in the *Johnson* factors, this was a simple case with a small amount in controversy, which Plaintiff's counsel knew at the outset.") (citations omitted). Little discovery took place. The

complaint is only six pages long. (ECF 1.) Few facts were in dispute. And the defendants appeared eager to settle early in the case.[8]

On the other hand, the Woodstock defendants' counsel sometimes made this litigation more complex than necessary. In one settlement offer, the Woodstock defendants' counsel raised (unfounded) legal theories,[9] which required research and analysis by plaintiffs' counsel. Even when the parties tentatively agreed to settle, the Woodstock defendants refused to execute the contract. And there remain concerning allegations that the Woodstock defendants orchestrated a fraudulent conveyance that ultimately derailed the initial settlement agreement.

Although "[t]he court will not penalize Plaintiff's counsel for inefficiencies caused by Defendants' conduct," *Orellana*, 2022 WL 3586513, at *3, this case's underlying simplicity cannot justify in full the requested $85,344.50 fee award. (*See* ECF 88-5, at 14.) By the courts tally, about 250 hours were billed to this relatively straightforward case (not including counsel's reductions). Accordingly, the court will reduce the award by 10% after making the deductions above. *See Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. CIV.A. MGJ-95-309, 2002 WL 31777631, at *13 (D. Md. Nov. 21, 2002) ("In making such downward adjustments, courts frequently have reduced entire fee applications, or portions thereof, by a stated percentage to accommodate for excessive vagueness, or to address some other deficiency, such as redundant time entries, failure to exercise billing judgment, or excessive number of hours sought.").

The defendants argue "the vast majority of the [p]laintiffs' attorney's fees and costs were unreasonable because the time and labor devoted to this matter was unnecessary[.]" (ECF 83, at

---

[8] Whether those settlement offers were reasonable, however, is debatable.

[9] For example, Mr. Turner asserted there was no way his clients could face exposure under a successor liability theory. This assertion required plaintiffs' counsel to research and explain that several cases in this district have extended successor liability under the FLSA. (ECF 84-3.)

17.) But this argument lacks specificity. The Woodstock defendants make no effort to inform the court which billing entries were unreasonable, other than noting the length and cost of the litigation. The court has conducted an independent review of the time records and made adjustments where necessary, as reflected above. With no more specific arguments by the defendants, the court need not go further. *See Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. CIV.A. MGJ-95-309, 2002 WL 31777631, at \*10 (D. Md. Nov. 21, 2002) (noting the court does not have the burden to sift through billing records "when the challenging parties have not thought the effort sufficiently important to undertake themselves").

Given the above, the court calculates the lodestar amount as $74,996.55.[10]

**B. Unsuccessful Claim Subtraction**

Once the court determines the lodestar amount, it must next "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). The plaintiffs are the prevailing parties, so they are entitled to reasonable attorney's fees and costs under the FLSA.

Goraya argues the plaintiffs' claims were moot against him on March 9, 2019, when the Woodstock defendants tendered the full amount due to the plaintiffs for the time they were employed by Woodstock. (ECF 84-12.) The Woodstock defendants also sent a check for $5,500 to plaintiffs' counsel for attorneys' fees in the same correspondence. With their claims mooted, Goraya contends the plaintiffs "were not the 'prevailing parties' with respect to the claims asserted against [him]," so they are not entitled to attorneys' fees. (ECF 83, at 15.) Because the case was moot before a settlement agreement was approved by the court, Goraya there was no "material

---

[10] After reviewing the record and the additional *Johnson* factors not yet discussed, the court finds a fee enhancement or deduction is not justified.

alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (citation and quotation marks omitted). Put differently, the Woodstock defendants argue they "tactically mooted" the case to stop the plaintiffs from succeeding on their claims, freezing their ability to become the "prevailing party." *See Price v. Berman's Auto., Inc.*, No. CV 14-763-JMC, 2016 WL 4805570, at *3–4 (D. Md. Sept. 13, 2016).

The court disagrees with the defendants on this admittedly close question. The defendants' letter, sent March 8, 2019, underplayed Woodstock's potential successor liability for the time the plaintiffs were employed by Players.[11] Indeed, the letter acknowledges that Woodstock may still be liable for *some* amount of money (presumably, under a successor liability theory) while contending that Goraya satisfied all obligations with the payment. (ECF 84-12, at 4.) This payment, however, did not offer the plaintiffs full relief because it included only $5,500 in attorneys' fees for *both* defendants. Again, the letter was sent on behalf of *both* Woodstock *and* Goraya. The total attorneys' fees, at that time, were over $20,000. A FLSA claim is not moot when a plaintiff has not received full relief. Full relief under the FLSA demands the payment of reasonable attorney's fees. *See Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) ("Obviously Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs."); *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 568 (6th Cir. 2013) ("Reasonable though the defendants' offer may have been (and may still prove to be), the disparity between what they offered and what the plaintiff sought generally will preclude a finding of mootness."); *Grimes v. Brunson Grp., Inc.*, No. 5:19-CV-387-

---

[11] The Players defendants did not settle until September 25, 2019 (ECF 39), so whether the plaintiffs could recover the money from their time working at Players was an open question.

BO, 2021 WL 328239, at *2 (E.D.N.C. Feb. 1, 2021) ("If this case were to proceed to trial and were plaintiff to prevail, plaintiff would be entitled to reasonable attorney's fees. Plaintiff still seeks an award of attorney's fees and costs, and this case is not moot because defendants' tender of payment does not cover what plaintiff asks for.")

Goraya argues that he was only one of the four defendants, so offering $5,500 in attorneys' fees represents 25% of the ~$20,000 in potential fees. This argument fails for two reasons. First, the letter accompanying the check did not give the plaintiffs any mechanism to accept payment from Goraya while reserving the right to seek the appropriate fees against Woodstock. (*See* ECF 84-12.) The letter, after all, was sent by an attorney representing both defendants. Second, even assuming the plaintiffs could have accepted the $5,500 to satisfy Goraya's attorneys' fees, that would not account for the possibility that Goraya may be jointly and severally liable with Woodstock for the outstanding fees.

That said, the court must note the role plaintiffs' counsel may have played in preventing the defendants from being able to fully tender attorneys' fees. Defense counsel sought to receive updated billing records from plaintiffs' counsel several times, to which he received no response. (ECFs 84-5; 84-6, 84-7; 84-8) And when plaintiffs' counsel did respond, he agreed to provide only quarterly updates. (ECF 84-9.) So the defendants' offer appeared to be based on the last known fee calculation. At the time the offer was made, Goraya appeared willing and able to settle the reasonable attorneys' fees attributable to his participation in the case. Allowing plaintiffs' counsel to withhold the information necessary to make an updated offer would produce inequitable results. To resolve this conundrum, the court will apportion Goraya's liability as the maximum amount he

11

could have been personally liable for at the time he purported to resolve the matter, $4,978.50,[12] in addition to 50% of the fees incurred to litigate the fee petition, $6,142.25, which totals $11,120.75. *See infra* Section III.E. The rest of the plaintiffs' attorneys' fees will be attributed to Woodstock.

### C. Success-Based Percentage Award

The third and final step requires the court to analyze the "degree of success enjoyed by the plaintiff," and determine whether the entire claimed fees amount, or "some percentage" of that amount, is a reasonable award. *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). Put differently, the court must ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 27 F.4th 291, 303 (4th Cir. 2022) (citation omitted).

Notwithstanding the above deductions, the court is satisfied that the plaintiffs' success—full recovery on their claims—provides a satisfactory basis for the final fee award.

### D. Costs

The requested costs of $846.41 are reasonable and align with the needs of the case. (*See* ECF 77-4.) "[D]istrict courts have discretion to determine the costs that will be assessed against losing defendants in FLSA cases." *See Orellana*, 2022 WL 3586513, at *4 (citation omitted); *see also* 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. §§ 3–507.2(b) & 3–427(d)(1) (allowing reasonable cost shifting). Losing defendants may be charged with costs such as "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in

---

[12] The court calculates this number by taking 25% of the total fees through March 8, 2019, including reductions by plaintiffs' counsel.

the course of providing legal services." *Orellana*, 2022 WL 3586513, at \*4 (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)) (internal quotation marks omitted). The expenses here include necessary court fees, reasonable travel mileage for a settlement conference, and a reasonably-priced meal during mediation. (*See* ECF 77-4.) Accordingly, the court will grant the request for costs in its entirety.

### E. Apportionment Between Defendants

By the court's calculation, the plaintiffs are entitled to $74,996.55 in attorneys' fees and $846.41 in costs. The court now turns to how those fees and costs will be divided between Woodstock and Goraya.

"[D]istrict courts have discretion over the proper allocation of a fee award among multiple defendants." *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 677 (4th Cir. 2015). The court may (1) "divid[e] the award equally among the defendants;" (2) "apportion[] the award according to the defendants' relative culpability;" (3) "award[] fees 'in the same proportions as [the] jury assessed actual damages;'" or (4) "hold[] a single defendant liable for fees related to a claim for which that defendants was 'solely or largely responsible.'" *Id.* (citing *Council for Periodical Distribs. Ass'n v. Evans*, 827 F.2d 1483, 1487–88 (11th Cir. 1987)). The court may also "combine two or more of these methods" or "select another method entirely." *Id.*

Here, Goraya tendered the full amount of his potential liability and a good-faith, close-to-adequate payment of attorneys' fees on March 8, 2019. It is clear the litigation after March 8, 2019, had little to do with claims against him, specifically. The plaintiffs were, of course, entitled to continue litigating the question of successor liability as to Woodstock. But that decision concerned Woodstock's liability, not Goraya's. And despite the plaintiffs' concerning allegations of Goraya fraudulently conveying the restaurant, the court does not find that allegation developed enough to

justify holding Goraya and Woodstock jointly and severally liable. Accordingly, the court will apportion Goraya's liability to 25% of the total attorney's fees incurred as of March 8, 2019,[13] and 50% of the plaintiffs' attorney's fees associated with this fee petition.[14] Woodstock will be liable for the remaining attorneys' fees. Goraya and Woodstock will split the costs evenly.

In sum, the plaintiffs will be awarded $11,120.75 in attorneys' fees against Goraya, and $63,875.80 against Woodstock.[15] The plaintiffs will be awarded $423.20 in costs against Goraya, and $423.20 in costs against Woodstock.[16]

## IV.   CONCLUSION

For the reasons stated here, the plaintiffs' motion for attorneys' fees and costs will be granted. A separate Order follows.

_9/29/22_
Date

_CCB_
Catherine C. Blake
United States District Judge

---

[13] The court calculates the total attorneys' fees up until March 8, 2019, as $19,914 (including deductions by plaintiffs' counsel, excluding court-imposed deductions from *supra*, Section III.A.2). Goraya's 25% of $19,914 comes out to $4,978.50.

[14] The court calculates the total fees associated with the fee petition (including the reply) as $12,284.50. So Goraya and Woodstock will each be apportioned $6,142.25.

[15] The court calculates this number by subtracting Goraya's liability for attorneys' fees ($11,120.75) from the total lodestar amount ($74,996.55).

[16] The total costs were $846.41. The court divides that amount between Goraya and Woodstock, and rounds down a cent.